UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
KLARA ALACHOUZOS,

                Plaintiff,

    - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
------------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

11 Civ. 1643 (BMC)

**COGAN**, District Judge.

    Plaintiff seeks review of the Commissioner's denial of benefits under Title XVI of the Social Security Act based on back pain. She relies almost entirely on her own description of her symptomology and her treating physician's conclusion that she is disabled in that she has specific limitations that severely limit her ability to sit, stand and walk. Her difficulty, however, as the Administrative Law Judge found, is that there is virtually no objective medical testing that supports these conclusions, and even worse for her case, her MRIs and x-Rays demonstrate a spine that has no abnormalities whatsoever. These objective tests, coupled with the records of her physical therapy and other medical evidence, constitute substantial evidence supporting the ALJ's conclusion. Her motion for judgment on the pleadings is therefore denied and the Commissioner's cross-motion is granted.

## BACKGROUND

    Plaintiff went to a hospital emergency room in June 2007 complaining that she had been suffering from low back pain for two years. She was in no acute distress. She said it hurt when hospital staff administered a straight leg raising test but the test was negative, and her

neurological examination was normal. She also complained of pain when her lower back was touched. The attending doctor prescribed Tylenol with codeine and a muscle relaxant and told her to follow up with an orthopedist.

She saw an orthopedist about a month later who noted the same kind of complaints. The orthopedist ordered an MRI and x-rays of the lower spine, which were normal; in fact, they showed no fractures, disc bulges, or nerve impairment of any kind. At her follow up appointment, a straight leg raising test was negative, and the orthopedist prescribed physical therapy and pain management. A subsequent appointment resulted in advice that was consistent with that approach.

For the next eight months, plaintiff had physical therapy. Plaintiff was consistent in her complaints of pain, although they did at times lessen minimally as the sessions progressed, and her therapists noted an increased ability to tolerate more strenuous exercises.

Towards the beginning of her physical therapy, plaintiff started treatment with Dr. Nalini Paddu, a physical rehabilitation specialist. She saw him five or six times over the next seven or eight months. He continued to recommend physical therapy, and continued to prescribe Tylenol with codeine and a muscle relaxant. Towards the end of her sessions with him, he recommended a pain injection, but she refused, and she continued physical therapy and other pain medication instead.

Dr. Paddu was consistent in characterizing plaintiff as unable to work. He ultimately concluded, in an assessment form supplied by the Commissioner, that she could not sit for more than fifteen minutes, after which she had to walk that long before sitting again. He opined that she could sit for two hours total during an eight hour workday; that she had to lie down for 30 minutes before she could resume sitting or walking; that she needed to spend four hours lying

down; and that she could not carry anything. He stated his diagnosis, as he had during his prior sessions, as low back and myofascial pain.

About two months into physical therapy, plaintiff was examined by a consultative physician, Dr. Scott Weinstein. She declined to perform most of the motion-range testing that he wanted to do, saying that she was afraid it would hurt too much. He found some limitations in the range of motion testing that she agreed to perform, but it was the doctor's view that these limitations resulted from her fear of causing pain if she moved too much rather than an actual physical inability to reach normal ranges. He nevertheless found that she had a "moderate limitation of extended ambulatory capacity and physical exertion upon lifting," from which he arrived at a diagnosis of "low back pain." A few days later, she had another x-ray, which showed no abnormalities.

Plaintiff's testimony at the hearing before the ALJ on November 9, 2009 was generally consistent with her self-reporting to the physicians and therapists who had seen her, although perhaps even stronger in describing the extent of her limitations. She testified that she had stopped working as a housekeeper and elder care provider between the late Spring and early Fall of 2007, which she had done for the seven years prior. She complained that she was unable to sleep because of her pain, and also complained of limitations in most dynamic functions. She had stopped working, she testified, because of "very bad headaches and backaches," which had started several years earlier. These pains occurred daily and lasted two to three hours, and she also had tingling in her fingertips and shooting pain into her right leg. She was able to walk five or six blocks, but could not sit for more than an hour or stand for more than forty minutes, and then had to lie down for three or four hours. She was able to do some light activities around the

3

house, but received help with some daily tasks from her mother. She took Tylenol with codeine for the pain, mostly at night, but it upset her stomach and caused her to have speech difficulties.

## THE ALJ'S DECISION

The ALJ applied the familiar five-step process required by the regulations, as described below. He found that plaintiff had a severe but non-listed impairment. His decision turned, as it often does in these cases, on his assessment of plaintiff's residual functional capacity. He concluded, contrary to the view of her treating physician, Dr. Paddu, that in fact she could stand or sit for six hours in an eight hour workday, and could push or pull twenty pounds occasionally and ten pounds frequently. Although her pain made her unable to continue her past work, the ALJ held, based on this finding, that she could perform "light work" as defined in the Social Security Administration's regulations, 20 C.F.R. 416.967(b).

In essence, the ALJ felt himself unable to find disability because there was nothing to support her symptomology except her own self-reporting, and almost all of the medical testing weighed against that self-reporting. For example, he noted that in her Adult Disability Report, one of the reports used to initiate the claims process, she had asserted that she had stenosis and herniated discs that were so bad she was hardly able to move, yet there was no medical diagnosis of these conditions at all, and they were inconsistent with some of her self-reporting as to what she was able to do. He went through the medical evidence in more detail than described above, and noted an absence of objective testing or even limb manipulation testing to support her claims.

With regard to Dr. Paddu's opinion that plaintiff is disabled, the ALJ acknowledged the treating physician rule, but nevertheless gave Dr. Paddu's opinion "limited weight because his conclusions are not supported by the underlying records, including diagnostic studies and

neurological examinations. Rather, they appear to be based mainly on the claimant's complaints and not objective findings."

As to plaintiff's credibility, the ALJ found that her characterization of the pain was not consistent with the medical record before him. He noted:

> The credibility determination is not an assessment of the claimant's veracity. In this instance, a key factor in determining credibility is the fact that the claimant's underlying clinical, diagnostic, and laboratory findings are minimal and fail to support the alleged complaints. The undersigned does not rule out the possibility that the claimant's symptoms are caused by other impairments that have yet to be diagnosed or fully assessed. However, the undersigned must render a decision based on the totality of the evidence in the present record.

Despite not accusing plaintiff of dissembling, he did note that there were some important contradictions and unexplained questions in plaintiff's testimony. For example, he noted the conservative course of her treatment, in which she had declined pain injections and never even discussed surgery. Although she claimed to use a cane all the time, he noted that the records showed she was not using one as of December 2007, which was six months after the hospital had provided her with one to use. Additionally, she was provided with a corset to support her back, but only wore it at home. Moreover, she contradicted herself on her ability to use public transportation, and stated that she does not drive a car because of her disability when in fact she does not have a car to drive. Finally, he noted that she had never reported her income, between $300-$500 per week, when she worked as a housekeeper/caregiver.

## DISCUSSION

### I. The Legal Framework

Disability benefits are available to anyone who is deemed "disabled" as that term is defined in 42 U.S.C. §§ 423(d) and 1382c (2006). A person is "disabled" when she

5

is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" consists of "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 1382c(a)(3)(D).

The Commissioner determines whether a claimant meets the statutory definition of "disabled" in five, successive steps. See 20 C.F.R. § 416.920 (2006); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). These steps may be summarized as follows:

> (1) Is the claimant gainfully employed? If she is, then she is not disabled. If she is not, then the analysis proceeds to the second step.
>
> (2) Does the claimant have a "severe" impairment(s) – i.e., one that significantly limits her physical or mental ability to do basic work activities? If she does not, then she is not disabled. If she does, then the analysis proceeds to the third step.
>
> (3) Does the claimant's impairment(s) meet or equal a "listed impairment"? If it does not, then the analysis proceeds to the fourth step. If it does, then she is disabled.
>
> (4) Does the claimant's impairment(s) prevent her from doing her "past relevant work"? If it does not, then she is not disabled. If it does, then the analysis proceeds to the fifth and final step.
>
> (5) Does the claimant's impairment(s), considered in conjunction with her residual functional capacity, age, education, and past work experience, prevent her from engaging in other substantial gainful work reasonably available in the national economy? If it does not, then she is not disabled. If it does, then she is disabled.

Id. To determine the answers to steps 4 and 5 of this process, the Administrative Law Judge must consider the claimant's "residual functional capacity," which is defined as "[t]he most an individual can still do despite their physical and/or mental limitations that affect what they can do in a work setting." 20 C.F.R. § 404.1545. In other words, once the ALJ analyzes how much plaintiff can do despite her impairments, he compares that ability to the requirements of her past

6

job (step 4); if plaintiff cannot do her past job, the ALJ then considers whether there are other jobs that plaintiff can do despite her impairment (step 5). Thus, one can only be deemed "disabled" at the third and fifth steps of the determination, whereas one can be deemed "not disabled" at every step except the third one.

"The burden of proving disability is on the claimant." Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984). "[O]nce the claimant has established a prima facie case that his impairment prevents his return to his prior employment [step four], it then becomes incumbent on the [Commissioner] to show that there exists alternative substantial gainful work in the national economy which the claimant could perform, considering his physical capability, age, education, experience and training." Id.

In weighing the medical opinion evidence, the ALJ is obligated to adhere to the rules set forth in 20 C.F.R. § 416.927(d) (2006). These rules indicate that, generally, more weight is given to the following: (1) opinions provided by physicians who have actually examined a claimant; (2) opinions provided by a claimant's treating physicians; (3) opinions supported by objective relevant evidence; (4) opinions that are more consistent with the record evidence as a whole; (5) opinions of specialists about medical impairments related to their area of expertise; and (6) opinions that may be supported by any other factors the claimant brings to the Commissioner's attention. Id. However, the Commissioner must give a treating physician's opinion "controlling weight" if his opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Id. at 416.927(d)(2). This is known as the "treating physician rule."

## II. Scope of Review

Judicial review of disability benefit determinations is governed by 42 U.S.C. §§ 421(d) and 1383(c)(3) (2006), which expressly incorporate the standards established by 42 U.S.C. § 405(g) (2006). In relevant part, § 405(g) adopts the familiar administrative law review standard of "substantial evidence," i.e., that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive [.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, then his decision must be affirmed. The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla[;][i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of the other evidence in the record that might detract from such finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." Rivera v. Sullivan, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991).

## III. Analysis

Back pain cases can present thorny problems both for Administrative Law Judges and reviewing courts. An x-ray or MRI may show some degree of disc bulge, or spondylolysis, or spondylolisthesis, which in one person is in fact so painful that she cannot work, but which in another will manifest as a mere annoyance. Undoubtedly, some unquantifiable aspect of the disability analysis must turn on the subjective response of a claimant to pain and discomfort, and yet the Administrative Law Judge, as factfinder, must factor in that subjective aspect in determining whether the regulatory definition of disability has been met. It is also an often

8

unspoken but known factor in these cases that while treating physicians' opinions and evaluations are afforded controlling weight if objective testing backs them up, both as a legal requirement and a common-sense one (because treating physicians know the claimants best), some treating physicians will accept their patient's self-reporting as sufficient by itself to form an opinion about their patient's limitations. The regulations recognize that in those situations, the treating physician's opinion need not be afforded controlling weight. See Cornell v. Astrue, 765 F. Supp.2d 38, 396-98 (N.D.N.Y. 2010).

This case is not as difficult as many back pain cases because, in fact, there is very little objective evidence of the high level disability of which plaintiff complains. Plaintiff has had multiple scans and there is no bulging disc, no sign of spondylolysis or spondylolisthesis, certainly no hernia. The films were perfectly normal, arguably better than normal for a 50 year old woman who has engaged in manual labor for at least seven years, as the spaces between the discs were not compressed and were described as "well maintained." The only clinical evidence supporting plaintiff's complaints were occasional less-than-perfect leg raising tests – most of them were negative – but there is some subjectivity in those tests, as shown by plaintiff's refusal to attempt a number of them with the consulting physician out of fear that they would cause pain.

Beyond that, the reports from plaintiff's physical therapy showed generally that she was progressing well. The results of physical therapists are properly not given as much weight as treating physicians, but they generally see the patient much more often. It was thus not unreasonable for the ALJ to combine those, together with the report from the consulting physician that found non-severe limitations, and the absence of any objective test results showing disability, as substantial evidence supporting a conclusion of non-disability.

The measurement of substantial evidence is of course a relative exercise, and on the other side of the scale, the only evidence that the ALJ had were plaintiff's self-reporting and Dr. Paddu's unsupported opinion adopting what she was telling him. The ALJ's decision shows that he was well-aware of the two step process for evaluating subjective complaints of pain; in such circumstances, courts should be reluctant to constrain the ability of an ALJ to evaluate such reports. See Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).

The "check" on the ALJ's decision is of course the requirement that the record not only contain substantial evidence supporting the ultimate conclusion of non-disability, but the ALJ must adequately explain his reasoning both as to his conclusion and the subsidiary factors that go into it, like the determination of the plaintiff's credibility. See Schaal v. Apfel, 134 F.3d 496, 506 (2d Cir. 1998). Another way of looking at this is that the decision must be both substantively correct – the record must contain substantial evidence to support the conclusion – and procedurally correct – the ALJ must recite the applicable law and then recite the application of the law to the facts to support that conclusion.

Plaintiff mainly complains that the ALJ did not sufficiently perform the latter step here but I find no procedural deficiency. The ALJ stated that there appeared no objective basis in the record for Dr. Paddu's conclusion, and there was nothing much more that could be said beyond that accurate statement. With regard to plaintiff's credibility, he set forth in fair detail sufficient contradictions within her own presentation, and between her "worst case" portrayal and those of the physical therapists and consultative physician, to support his finding that while she was not necessarily lying, her self-reporting seemed more likely the result of a desire to avoid pain than having a discernible physical cause. This is not to say that there is anything wrong with wanting to avoid pain – who doesn't – but I think the way the ALJ reconciled plaintiff's pain avoidance

10

desire with the clinical evidence was proper under the regulations – she has a severe, non-listed impairment, but she in fact does retain sufficient residual functional capacity to do light work. At least, there was substantial evidence to support that conclusion, and the ALJ properly recited what it was.

Finally, plaintiff implies that the ALJ should have obtained more evidence, citing Hutsell v. Manassa, 259 F 3d 707 (8th Cir. 2001), and Higgins v. Apfel, 136 F. Supp. 2d 971(E.D. Mo. 2001). But she does not say what evidence the ALJ should have obtained, and the record seems complete to me, containing all of the notes from plaintiff's treating physician, her physical therapy reports, a consultative examination, the reports on her scans, and the sole hospital admission report. I also note that plaintiff was represented at the administrative hearing by counsel (as she is here), and while that does not reduce the ALJ's duty to obtain records even if the attorney does not request them, see Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996), it is of more than passing interest that plaintiff's counsel not only did not identify any missing records when he was before the ALJ (the ALJ expressly asked him whether there were any missing records, and he replied that there were not) or raise this point on his administrative appeal from that decision, but he has still not identified any missing records here. Plaintiff's claim in this regard boils down to the contention that if the treating physician's conclusions are unsupported by medical evidence, then the ALJ's duty to complete the record entails going out and developing more evidence until there is a basis for the treating physician's conclusions. I reject that suggestion under the applicable law and regulations. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is denied and defendant's cross-motion is granted. The Clerk is directed to enter judgment in favor defendant, dismissing the complaint.

**SO ORDERED.**

                                                                  /s/
                                                          _____
                                                                  U.S.D.J.

Dated: Brooklyn, New York
           February 21, 2012